JOHN STEEN V. FRANK R. SCHEEL.

FILED NOVEMBER 6, 1895. NO. 5259.

1. **Landlord and Tenant**: CONSTRUCTION OF LEASE. A lease provided that the tenant should have and hold the leased premises "from the 1st day of December, 1887, to the 1st day of December, 1889, with the refusal of leasing said property for the term of two years longer from December 1, 1889, to December 1, 1891. * * * If the tenant holds over the term of two years as above agreed, this lease shall be binding upon both parties for the next two years or until the 1st of December, 1891." *Held*, That this was a lease of the premises for two years from December 1, 1887, and an agreement on the part of the lessor that at the expiration of the term he would re-lease the premises to the tenant, in case he should desire it, on the same terms and conditions mentioned in the first lease

2. ———: ———. The tenant at no time had any communication with the lessor on the subject of renewing the lease. Before his term expired he removed his furniture and goods out of the leased building and locked it up. He occupied no part of the premises after the termination of the lease and exercised no control over them further than the retention of the key for about two months when he sent it to the lessor. *Held*, That these facts were insufficient to raise the presumption or support a finding that the relation of landlord and tenant existed between the parties after the 1st day of December, 1889.

3. ———: CONTRACT. Generally, the relation of landlord and tenant is founded upon express contract; but such relation may be presumed from the conduct of the parties in the premises.

ERROR from the district court of Saunders county. Tried below before MARSHALL, J.

*J. R. Gilkeson,* for plaintiff in error, cited: *Hammond v. Eckhardt,* 9 N. Y. Sup., 508.

*George I. Wright,* also for plaintiff in error.

*George W. Simpson* and *J. E. Frick, contra,* cited: *Hunter v. Silvers,* 15 Ill., 174; *Sutherland v. Goodnow,* 108 Ill., 528; *Thiebaud v. First Nat. Bank,* 42 Ind., 212; *Bradford v. Patten,* 108 Mass., 153; *Barnett v. Feary,* 101 Ind., 95; *Eichorn v. Peterson,* 16 Ill. App., 601; *Reed v. Campbell,* 4 Atl. Rep. [N. J.], 433; *Elevator Co. v. Brown,* 36 O. St., 660; *Blumenberg v. Myres,* 91 Am. Dec. [Cal.], 560; *Crommelin v. Thiess,* 70 Am. Dec. [Ala.], 499; *Schuyler v. Smith,* 51 N. Y., 309.

Ragan, C.

On the 25th day ot October, 1887, John Steen and Frank R. Scheel entered into an agreement in writing, in and by which Steen leased to Scheel a building known as the "Killian Building," situate on block 149, in the city of Wahoo. The lease provided that Scheel was to have and hold the leased property "from the 1st day of December, 1887, to the 1st day of December, 1889, with the refusal of leasing said property for the term of two years longer from December 1, 1889, to December 1, 1891." The rent reserved in such lease was $960, payable in installments of $40 on the first day of each month, commencing on the 1st day of December, 1887. The lease further provided: "But it is further agreed that if party of the second part [tenant] holds over the term of two years as above agreed, that this lease shall be binding upon both parties for the next two years, or until the 1st of December, 1891." Scheel entered into the possession of the leased premises and paid the rent thereof up to the 1st day of November, 1889. Prior to the 1st day of December, 1889, he moved his furniture and stock of goods out of

the building into a building of his own which he had constructed during the summer of 1889. He locked up the leased building, but retained the key thereof until some time in January, 1890, when he left it at the house of Steen. Steen did not at any time notify Scheel that he could or could not renew the original lease or remain in possession of the leased property thereunder after the 1st day of December, 1889. Scheel did not renew or attempt to renew the original lease, had no communication with Steen on the subject, nor did he occupy the property or any part thereof after the said date further than to retain possession of the key. Steen brought this suit against Scheel to the district court of Saunders county to recover $120 rent for said premises for the months of November and December, 1889, and January, 1890. At the close of the evidence the jury, in obedience to an instruction of the district court, returned a verdict in favor of Steen for the sum of $40, the rent for such building for the month of November, 1889, and to reverse the judgment pronounced on this verdict Steen prosecutes to this court a petition in error.

1. What construction should be placed upon these clauses found in the lease: "With the refusal of leasing said property for the term of two years longer from December 1, 1889, to December 1, 1891;" "But it is further agreed that if the party of the second part holds over the term of two years, as above agreed, that this lease shall be binding upon both parties for the next two years or until December 1, 1891"? Was this a lease of the property to commence on the 1st day of December, 1889, and to terminate on the 1st day of December, 1891? In *Sutherland v. Goodnow*, 108 Ill., 528, the lease contained this clause: "'And it is also provided, as a part of this agreement, that the said Sutherland shall have the option to take the said premises for another year at the same price or rent, provided said first party does not sell said premises before the end of the month of April, A. D. 1881.'" The court, in

construing this provision of the lease, held: "A clause in a lease for one year giving the lessee the option, on a certain condition, to renew the lease for another year, is not a demise to take effect at the expiration of the first year. It is a mere covenant or undertaking of the lessor to let the lessee have a second term, which may be enforced on bill for specific performance or upon which an action at law may lie for a breach." (See, also, *Hunter v. Silvers*, 15 Ill., 174.) We think a proper construction of this lease is that by it Steen leased the premises to Scheel absolutely for two years and agreed that at the expiration of the original lease he would make another lease of the premises to Scheel in case he should desire it, on the same terms and conditions mentioned in the first lease. By the lease between the parties Steen did not lease the premises to Scheel for two years from the 1st day of December, 1889, but agreed in writing that he would lease the premises if Scheel should desire said lease.

2. Counsel for Steen does not seem to question this construction of the lease, but his contention is that at the expiration of the lease Scheel did not surrender possession of the leased premises to Steen; that after December 1, 1889, Scheel remained in possession of the premises and thereby exercised his option to re-lease the premises under the terms of the original lease for two years from December 1, 1889; and that by his failure to deliver the actual possession of the premises to Steen and his remaining in possession thereof after the original lease expired he became a tenant of the premises for two years from December 1, 1889. Generally, the relation of landlord and tenant is founded upon express contract; but the relation may be presumed from the conduct of the parties toward each other. Would the facts that Scheel, at the expiration of his original lease, neglected to surrender the actual possession of the leased premises to Steen, neglected to notify him that he did not desire to re-lease the premises or to

occupy them after the expiration of his original lease, and his retention of the key to the building, support a finding that the relation of landlord and tenant existed between Steen and Scheel after the 1st day of December, 1889? We think not. In *Canal Elevator & Warehouse Co. v. Brown*, 36 O. St., 660, the elevator company leased certain property to Brown from the 1st day of May, 1871 to the 1st day of September, 1879. The lease contained a provision that in case the elevator company should, during the existence of the lease, purchase the fee-simple title to the premises that the lessee at the expiration of the lease would re-lease the property for eight years on the same terms as he held it under the original lease. Before the original lease expired the elevator company notified the lessee that it had purchased the fee-simple title to the leased premises and requested the lessee to renew the lease. The lessee declined to renew the lease, and on the 2d day of September, 1879, vacated the premises and two days thereafter returned the keys to the lessor. The lessee, however, left some four hundred bushels of coal in the leased property until September 18, 1879. It was insisted by the lessor that as the lessee had occupied the premises subsequent to September, 1879, he must be regarded as having renewed the lease, and in speaking of this contention the court said: "Whether temporary and partial occupancy of premises by lessees should be regarded as consent to and in effect a renewal, under such a clause in a lease, must be determined from the circumstances, and not merely from the fact of such occupancy. Looking to the terms of the notice to renew, given by the lessor on August 30, 1879, the refusal of the lessees to renew, their removal from the premises on September 2, 1879, and the return of the keys to the office of the lessor shortly thereafter, we are led to the conclusion that there was no act of the lessees which should estop them to deny such renewal. The fact that a small quantity of coal was permitted to remain in one of the

bins until September 18, 1879, is explained in the testimony, and cannot properly lead to any other conclusion than the one already stated, for the intention not to renew had already been manifested in unmistakable form." (See to the same effect *Thiebaud v. First Nat. Bank of Vevay*, 42 Ind., 212; *Renoud v. Daskam*, 34 Conn., 512; *Bradford v. Patten*, 108 Mass., 153.) We are not called upon at this time to define what particular conduct will raise the presumption or support a finding that the relation of landlord and tenant exists between two or more parties; but the evidence in this record is insufficient to raise such presumption or support a finding that such relation existed between Steen and Scheel after the 1st day of December, 1889. If the conduct of the parties has been such as to bind Scheel for the payment of this rent to the 1st day of December, 1891, of course Steen is bound to recognize Scheel as his tenant for that time; in other words, the contract must be mutual to bind either. If this was an action of forcible detainer by Steen against Scheel for the possession of these premises, and if the provision in the lease should be treated as a continuing offer and agreement on the part of Steen to lease the premises for a further term of two years after the expiration of the original lease, still there would be an entire lack of evidence to show that Scheel accepted of said offer or agreed to lease such premises for said second term; and the fact that he locked up the building at the time that he removed his goods therefrom and retained the key without paying any rent for said premises after December 1, 1889, offering to pay any, or even requesting a lease of said premises after that time, or notifying Steen that he had elected to avail himself of the offer and agreement in the lease to occupy as tenant for two years after the first lease expired, would not defeat such action by Steen. The judgment of the district court must be and is

AFFIRMED.